**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MICHAEL PREMINGER,

Plaintiff,

v. Case No.: 3:25-cv-772-WWB-LLL

RED ROBIN INTERNATIONAL, INC.,

Defendant.
_______________________________/

**ORDER**

THIS CAUSE is before the Court on Defendant's Motion to Dismiss the Second Amended Class Action Complaint for Lack of Subject Matter Jurisdiction ("**Motion to Dismiss**," Doc. 40) and Plaintiff's Response in Opposition (Doc. 44) and Notice of Supplemental Authority (Doc. 54).[1] For the reasons set forth below, Defendant's Motion will be granted.

## I. BACKGROUND

Plaintiff, Michael Preminger, alleges that Defendant, Red Robin International, Inc. ("**Red Robin**"), sent multiple automated text messages to his cellular telephone after he withdrew his consent to receive such messages. (Doc. 36 at 6–7). The text messages caused harm to Plaintiff in the form of statutory-rights violations, trespass, annoyance,

[1] Defendant's still-pending Motion to Dismiss the First Amended Class Action Complaint (Doc. 35) will be denied as moot. Additionally, the Court notes that Plaintiff's Response and Supplement fail to comply with the Court's January 13, 2021 Standing Order. In the interests of justice, the Court will consider the filings because this matter is fully briefed and ripe for resolution on the merits, but the parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking or denial of filings without notice or leave to refile.

nuisance, invasion of privacy, intrusion upon seclusion, and loss of telephone storage space. (*Id.* at 10–11). Accordingly, Plaintiff alleges violations of the Florida Telephone Solicitation Act ("**FTSA**"), Fla. Stat. § 501.059, on behalf of a putative class of Florida persons who, "since July 1, 2021 through the date of class certification, received [from Defendant] one or more text messages . . . more than fifteen [] days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a 'stop' instruction." (*Id.* at 11; *see also generally id.*). Plaintiff alleges that the class consists of more than 3,334 members, that minimal diversity exists between the parties, and that the aggregate amount in controversy exceeds $5 million. (*Id.* at 6).[2]

Plaintiff's claimed amount-in-controversy is supported by a number of factual allegations, calculations, and inferences. Defendant operates 475 total restaurants and maintains a database of 16.4 million "Red Robin Royalty" members. (*Id.* at 3). At signup, those members have the option of agreeing to receive automated marketing text messages and are required to submit an active telephone number. (*Id.*). After allocating Defendant's 16.4 million Royalty members evenly across its 475 locations, Plaintiff alleges that Florida accounts for approximately 552,421 Royalty members. (*Id.* at 4). But "only 10,000 violative Florida texts—approximately 625 per Florida restaurant—would

[2] The Court notes that all allegations falling outside of Plaintiff's own acts and experiences are pleaded upon Plaintiff's information and belief. (Doc. 36 at 1). Additionally, the Court notes that Plaintiff identifies a second class that is limited to members who received text messages sent by Defendant's auto-dialing messaging platform. (*Id.* at 9, 11). Defendant, in its Motion to Dismiss, argues that the two classes are redundant because Plaintiff alleges that all text messages were sent via the platform. (Doc. 40 at 8 n.6 (citing Doc. 36 at 9)). Plaintiff offers no reply to this argument and, with one exception, refers to a singular "class" throughout its Response. Likewise, the Second Amended Class Action Complaint ("**SAC**") often refers to a singular class, including in its jurisdictional allegations. (Doc. 36 at 2–6). For ease of reference, the Court will refer to a singular class throughout this Order.

place more than $5,000,000 in controversy," given the FTSA's minimum recovery of $500 per violative act. (*Id.*); *see* Fla. Stat. § 501.059(10)(a). Plaintiff, moreover, seeks $1,500 in damages per violation because Defendant allegedly sent the unwanted messages willfully or knowingly. (Doc. 36 at 11, 15, 17); *see* Fla. Stat. § 501.059(10)(b). Therefore, "[o]nly about 0.60% of th[e] Florida [Royalty] member base would need to have received a single post-STOP promotion text for the" amount in controversy to exceed $5 million.[3] (Doc. 36 at 4). Alternatively, after a similar pro-rata allocation of Defendant's average weekly sales per restaurant and average cost per check, Plaintiff estimates that on a yearly basis only .13% of Defendant's check-receiving patrons would need to receive a violative text to put more than $5 million into controversy.[4] (*Id.*).

Plaintiff alleges that a similar lawsuit shows that Defendant has ignored opt-out requests since at least 2018. (*Id.* at 6 (citing Doc. 1, *Geraci v. Red Robin Int'l, Inc.*, No. 1:18-cv-15542 (D.N.J. Nov. 1, 2018))). "Plaintiff therefore alleges that the proposed Class numbers in the thousands and exceeds 3,334 persons . . . and that the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs." (*Id.*).

## II. LEGAL STANDARD

A party may move to dismiss the claims against it for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Attacks on subject matter jurisdiction . . . come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919

[3] 3,334 class members × $1,500 recovery per member = $5,001,000. 3,334 class members ÷ 552,421 Florida Royalty members = .006 or .6%.

[4] Again, this calculation assumes that each class member puts $1,500 into controversy pursuant to § 501.059(10)(b), Florida Statutes.

F.2d 1525, 1529 (11th Cir. 1990)). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "When jurisdiction is properly challenged, a plaintiff has the burden of showing jurisdiction exists." *Kruse, Inc. v. Aqua Sun Invs., Inc.*, No. 6:07-cv-1367-Orl, 2008 WL 276030, at *2 (M.D. Fla. Jan. 31, 2008).

## III. DISCUSSION

"The Class Action Fairness Act provides that the district courts 'shall have original jurisdiction' over class actions that have at least 100 members, an [aggregated] amount-in-controversy exceeding $5 million, and minimal diversity between the parties . . . ." *Fox v. Ritz-Carlton Hotel Co.*, 977 F.3d 1039, 1045 (11th Cir. 2020) (quoting 28 U.S.C. § 1332(d)(2)). "A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). A plaintiff need not "prove the amount in controversy beyond all doubt or [] banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). Generally, then, where "the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction." *Id.* at 770 (emphasis removed) (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007)). However, where a defendant raises a factual

attack against subject-matter jurisdiction, "no presumptive truthfulness attaches to [the] plaintiff's allegations," and the court may "evaluat[e] for itself the merits of the jurisdictional issue."[5] *Lawrence*, 919 F.2d at 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

Defendant argues that Plaintiff has failed to establish that this case puts over $5,000,000 into controversy. Defendant spends much of its Motion attacking Plaintiff's jurisdictional allegations as having no "necessary or plausible correlation to the number of individuals who might have both received an unsolicited text message from Red Robin and then received a second one more than 15 days after sending a 'stop' request." (Doc. 40 at 8). But Defendant also relies on the Declaration of Yan Yan Xia, who works for a company that has provided marketing and technology services to Defendant since January 2024. Xia declares that, upon review of Defendant's Royalty club data and communications history, "there is no scenario in which the amount in controversy in this matter even approaches $5,000,000." (Doc. 40-1 at 2). Defendant is therefore correct to characterize its Motion as a factual attack on the Court's subject matter jurisdiction. (Doc. 40 at 6, 12); *see Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) ("Appellees' motion to dismiss was a factual attack because it relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings."); *Zeflon LLC v. World Reach Health, LLC*, No. 22-cv-23662, 2025 WL 973531, at *17 n.6

[5] This is true at least where, as here, "the facts necessary to sustain jurisdiction"—meaning facts relevant to CAFA's amount-in-controversy requirement—"do not implicate the merits of plaintiffs cause of action." *Garcia*, 104 F.3d at 1261; *see also id.* at 1262 (stating that "jurisdiction and the merits of an action [are] intertwined where . . . a statute provides the basis for both subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief" (quotations omitted)).

(S.D. Fla. Apr. 1, 2025) ("*How* the defendant attacks [] subject-matter jurisdiction—not *what* it attacks—is what determines whether the attack is facial or factual.").

Accordingly, the burden of showing that jurisdiction exists shifts to Plaintiff. That burden is typically light with respect to the required amount-in-controversy. *See, e.g.*, *Federated Mut. Ins. Co.*, 329 F.3d at 807 ("Generally, '[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 289)). But it still requires Plaintiff to "submit facts through some evidentiary method and" requires him to prove "by a preponderance of the evidence that the [Court] does have subject-matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)[6]; *see also Active Acquisitions*, *LLC v. B+S Card Servs. GMBH*, No. 8:12-cv-737-T, 2013 WL 12167540, at *1 (M.D. Fla. May 10, 2013). Taken together, then, *Federated Mutual* and *Paterson* require Plaintiff to "show by a preponderance of the evidence that it's not legally impossible for [his proposed class] to recover" over $5,000,000. *Zeflon*, 2025 WL 973531, at *18.

However, and notwithstanding his arguments on the persuasive value of Xia's Declaration, Plaintiff has put forth no evidence and thus cannot show that subject matter jurisdiction exists. Indeed, Plaintiff's Response relies entirely on the sufficiency of the SAC's allegations and asks the Court to do the same. (*See* Doc. 44 at 10 ("[The] Court should ignore Defendant's declaration and rely on Plaintiff's allegations to deny the Motion.")). As an initial matter, Plaintiff's pro-rata calculations on the number of class members are inherently speculative and backward-looking and are pleaded only upon

[6] Decisions of the Fifth Circuit issued on or before September 30, 1981, are binding upon the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Plaintiff's information and belief. (*See, e.g.*, Doc. 36 at 4–6 (alleging that the class exceeds 3,334 members, which is precisely the number of members required to put over $5 million into controversy, because such a class size "would represent only about 0.13% of one year's estimated Florida guest checks")). The Court "is not required to blindly credit estimates in pleadings that are based on 'information and belief' in the absence of any other evidence or indication that they are accurate." *Calta v. Vision Solar FL, LLC*, No. 8:22-cv-897, 2022 WL 17730114, at *5 (M.D. Fla. Dec. 16, 2022). And here, there is no other evidence. *See Cap. Auto Brokers, LLC v. Atl. Acceptance Corp.*, No. 22-CV-81344, 2023 WL 12144574, at *3 (S.D. Fla. May 3, 2023) (stating that when a "[c]omplaint is not verified, the Court cannot accept [its] allegations as evidence" (citing *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1305 n.23 (11th Cir. 2011))). Xia's Declaration concerning the amount-in-controversy is therefore "undisputed," entitling Defendant to dismissal. *SunSouth Bank v. First NBC Bank*, No. 1:13-CV-379, 2015 WL 9581418, at *4 (M.D. Ala. Dec. 29, 2015), *aff'd,* 678 F. App'x 811 (11th Cir. 2017).

The Court also notes that Plaintiff did not move for jurisdictional discovery prior to filing his Response, failed to request such opportunities in the Response itself, and never requested an evidentiary hearing concerning jurisdictional facts. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009) (upholding dismissal for lack of personal jurisdiction where party requested jurisdictional discovery in its briefing but failed to move for or take any formal steps toward completing it). And Plaintiff did not contend, either in his Response in Opposition to Defendant's Motion to Stay Discovery (Doc. 46), or his Motion to Compel Discovery (Doc. 52), that his outstanding discovery requests

were needed to fully defend against dismissal (which Plaintiff had already opposed).[7] Accordingly, Plaintiff has not identified any discovery necessary to resolve the instant Motion and likewise has not requested that its resolution be stayed. *Cf. Davis v. Austin*, No. 3:22-cv-237, 2023 WL 4352444, at *11 (M.D. Fla. July 5, 2023) (concluding that neither an evidentiary hearing nor a period of jurisdictional discovery were warranted where plaintiffs never "sought to open jurisdictional discovery"). Precedent shows that jurisdictional discovery may be warranted even absent a "formal motion for [the] same," but not where, as here, the party requiring such discovery has failed to show "diligence." *Rd. Space Media, LLC v. Miami-Dade Cnty.*, No. 19-21971-Civ, 2020 WL 2988424, at *1 (S.D. Fla. Apr. 24, 2020) (quotation marks omitted) (collecting cases). The SAC will be dismissed accordingly.

## IV. CONCLUSION

For the reasons stated herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Dismiss the First Amended Class Action Complaint (Doc. 35) is **DENIED as moot**.
2. Defendant's Motion to Dismiss the Second Amended Class Action Complaint for Lack of Subject Matter Jurisdiction (Doc. 40) is **GRANTED**.
3. The Second Amended Class Action Complaint (Doc. 36) is **DISMISSED without prejudice**.
4. The Clerk is directed to enter judgment dismissing the case without prejudice, terminate all other pending motions, and close this case.

[7] Discovery is now stayed pursuant to United States Magistrate Judge Laura Lothman Lambert's August 20, 2026 Order (Doc. 53 at 5).

**DONE AND ORDERED** in Jacksonville, Florida on September 17, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record